```
IN THE UNITED STATES DISTRICT COURT FOR THE
            EASTERN DISTRICT OF OKLAHOMA

CHARLENE ELISE ARTHUR,         )
                               )
            Plaintiff,         )
                               )
v.                             )   Case No. CIV-17-053-KEW
                               )
NANCY A. BERRYHILL, Acting     )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )
```

**OPINION AND ORDER**

Plaintiff Charlene Elise Arthur (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the determination of this Court that the Commissioner's decision be AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 57 years old at the time of the ALJ's decision. Claimant obtained a GED. Claimant has worked in the past as a cashier, stocker, and chicken de-gutter. Claimant alleges an inability to work beginning January 11, 2013 due to limitations resulting from skin cancer, arthritis, back problems, and COPD.

**Procedural History**

On February 22, 2013, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 9, 2015, Administrative Law Judge ("ALJ") Donald S. Stults conducted an administrative hearing by video with Claimant appearing in El Paso, Texas and the ALJ presiding from Oklahoma City, Oklahoma. On September 25, 2015, the ALJ issued an unfavorable decision. The Appeals Council denied review on December 20, 2016. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform her past relevant work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to find her headaches constituted a severe impairment at step two; (2)

arriving at an RFC which failed to account for the limitations associated with Claimant's skin cancer; and (3) failing to account for Claimant's exemplary work history in performing his credibility analysis of Claimant's statement.

**Step Two Analysis**

In his decision, the ALJ determined Claimant suffered from the severe impairments of osteoarthritis of the right shoulder, degenerative disc disease of the cervical and lumbar spines, and recurrent neoplasms of the skin. (Tr. 24). The ALJ concluded Claimant retained the RFC to perform the full range of light work. (Tr. 25). After consultation with a vocational expert, the ALJ found Claimant could perform her past relevant work as a cashier/checker. (Tr. 30). Based upon this finding, the ALJ determined Claimant was not under a disability from January 11, 2013 through the date of the decision. (Tr. 32).

Claimant contends the ALJ failed to properly find that her headaches were a severe impairment at step two. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered

5

separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

The ALJ acknowledged Claimant's complaints of headaches but determined that the headaches were controlled with medication since the onset date, citing to Exhibits 16F and 18F. (Tr. 24). These exhibits consist of Claimant's medical records from William Beaumont Army Medical Center. While at the Center, Claimant complained of weekly to daily headaches. (Tr. 2553). An MRI of Claimant's brain and lab results were "essentially normal," with only intracranial calcifications noted. (Tr. 2553, 2587). The records indicate neurological examinations of Claimant had no sensory abnormalities, no coordination abnormalities, Claimant was oriented, concentration appeared normal, speech fluency/comprehension was normal, memory appeared normal, and fund of knowledge appeared intact. (Tr. 2588, 2650, 2654, 2922, 2959, 3009). Claimant also reported a good general overall feeling with pain severity of her headaches rated

as a two out of ten in July of 2013. (Tr. 2639). She reported "slightly less headaches" in January of 2015 with Elavil. (Tr. 2921-22). In May of 2014, Claimant stated her headache pain was three to seven out of ten. (Tr. 3008). She told her doctor that she did not want any more medications or invasive testing at that time. (Tr. 3010). In September of 2014, Claimant reported headache pain of one to four out of ten. (Tr. 2959). Claimant was prescribed medication which decreased the headache pain. (Tr. 2553, 2922, 2979, 3010). At no time did any of her physicians at the Army hospital suggest functional limitations associated with her headache condition, including the reviewing consultative physicians employed in the case. (Tr. 86-87, 100-101).

Because other severe impairments were found at step two and the ALJ considered the effects of her headaches as a non-severe impairment in the later steps of the sequential evaluation, the ALJ has satisfied his obligations under the regulations. No error is attributed to the finding of non-severity of Claimant's headaches at step two.

Claimant also contends the ALJ should have taken the side effects from her pain medication into consideration. He found Claimant alleged some sleepiness from her medication but did not nap during the day. (Tr. 30). Claimant testified that her pain

7

medication "might make me sleepy or something." (Tr. 54). She did not complain of this effect to her physicians and did not state that the extent of the sleepiness invaded her ability to concentrate. She was also somewhat indefinite to its constant occurrence, stating it "might" make her sleepy "or something." This effect was not sufficiently regular or definite to require further restrictions in the RFC.

### RFC Determination

Claimant also asserts the ALJ did not properly account for the limitations caused by the time off of work required for Claimant to obtain treatment for her skin cancer. The ALJ found Claimant's skin cancer to be a severe impairment. (Tr. 24). She testified that the only restriction caused by this condition upon the ability to work is the presence of dust and dirt after a treatment where the carcinoma is either cut off, burned off, scraped off or Efudex is applied which turns it bright red and burns the skin. (Tr. 52-53). When the lesion is cut off, it can take up to six weeks to heal and a burn can take up to two months. She last had a removal procedure performed in 2013 but had had over 100 procedures done in all. (Tr. 53).

The ALJ recognized that Claimant had several lesions removed in 2012-14 with the last removal in January of 2015. He found that

the records do not indicate any prolonged would site healing difficulties. He also recognized Claimant's testimony concerning keeping the wound site clean as the only restriction the condition placed upon her ability to work but concluded that this could be achieved by covering the wound. (Tr. 28).

Claimant went a year without treatment before obtaining better health care coverage with the military. (Tr. 502-03). Understandably, Claimant received considerable treatment for a period of time thereafter to address the lesions that arose during the time she was not seeking treatment. Nothing in the record would indicate that the same frequency of treatment would continue in perpetuity. Moreover, none of her treating physicians or the reviewing consultants advised of the frequency of treatment which Claimant now suggests or the length of time required for the treatment such that Claimant could not engage in basic work activities. The ALJ's conclusion that the one restriction which Claimant did identify associated with this condition was reasonable in light of the medical record. Claimant suggests in the briefing that environmental restrictions should have been included in the RFC to account for keeping the wound clean. Rather, satisfying this requirement of wound cleanliness and covering would be Claimant's responsibility not that of her employer. The record simply does not

9

support an inability to work due to the treatment Claimant receives for her carcinoma.

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The ALJ's RFC assessment was supported by substantial evidence.

**Credibility Determination**

Claimant contends the ALJ did not properly consider her exemplary work history in evaluating the credibility of her statements. The ALJ expressly considered Claimant's work history to which she testified. (Tr. 26). He also reviewed her earnings record. (Tr. 23). His basis for discounting Claimant's credibility did not surround a lack of a work history or the failure to engage in substantial gainful activity. The ALJ specifically recounted that Claimant's credibility on the severity and intensity of her impairments was suspect because she was repeatedly released from treatment by her treating physicians without limitation, the medical consultants found Claimant could perform medium work - an exertional level which exceeded that provided in the RFC, her own testimony concerning her extensive activities, including regular exercise. (Tr. 28-30).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility

include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's treatment, the objective medical testing, the failure to impose any functional limitations by treating sources, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

DATED this 28th day of March, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE